IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANDREA GROVE, and TOM GROVE, | ) | |
| | ) | |
| Plaintiffs, | ) | 8:12CV95 |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW HERRICK, in his official and individual capacities, MARK CERNY, in his official and individual capacities, and THE CITY OF RALSTON, NEBRASKA, | ) ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS |
| | ) | |
| Defendants. | ) | |

On March 7, 2012, the plaintiffs, Andrea Grove and Tom Grove, filed a complaint against the defendants, Matthew Herrick, Mark Cerny, and the City of Ralston, Nebraska (Ralston). (See Compl., ECF No. 1.) Now before me is the defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (ECF No. 14.) For the following reasons, the defendants' motion will be granted in part.

## I. BACKGROUND

The complaint alleges as follows. At relevant times, Herrick and Cerny were employed by Ralston's police department. (Compl. ¶ 7, ECF No. 1.) On March 8, 2008, Herrick and Cerny responded to a complaint of noise at 4740 South 83rd Street, Apartment 3, in Ralston. (Id. ¶ 8.) After their attempt to gain access to the apartment failed, Herrick and Cerny moved their cruisers out of sight and waited outside the apartment building. (Id.) Sometime later, Herrick and Cerny observed Andrea Grove (Andrea) descending the building's stairs. (Id. ¶ 9.) Herrick and Cerny approached Andrea and learned that she was a minor, that she was intoxicated, and that she had been inside Apartment 3. (Id.) Herrick and Cerny then ordered Andrea back into the apartment building and instructed her to knock on the door of Apartment 3 while the officers hid behind her. (Id. ¶ 10.)

When the door opened, Herrick and Cerny entered the apartment and began detaining the occupants. (Id. ¶ 11.)

Two males were taken from the apartment, placed in restraints, and detained in the hallway of the apartment building under Cerny's supervision. (Id. ¶ 12.) The apartment's remaining occupants remained inside under Herrick's supervision. (Id.) Herrick placed Andrea in restraints and sat her down in the apartment's living room. (Id. ¶ 13.) Some of the apartment's occupants "became verbally abusive" to Andrea, believing that she cooperated with the police. (Id. ¶¶ 12-13.) Andrea feared for her safety, and while Herrick and Cerny "were otherwise occupied," she was "able to get up off the floor, exit the apartment through a balcony door, and fall three stories to the sidewalk below without any intervention from [Herrick and Cerny]." (Id. ¶ 14.) Andrea suffered "a radius fracture, [an] ulna styloid fracture, [a] flail chest, [a] rib fracture, [and] mental anguish," and she incurred medical expenses. (Id. ¶ 20.)

The plaintiffs allege that the defendants violated Andrea's "Fourth Amendment rights to be safe and secure in her person." (Id. ¶ 18.) They also allege that Ralston is liable under 42 U.S.C. § 1983 "for the municipal action/practice of using a person/minor as an informant/human shield in violation of [Andrea's] civil rights" and "for . . . failing to train [Herrick and Cerny] that a duty exists to protect an individual in involuntary custody when the individual is unable to provide protection for themselves, in violation of the Fourteenth Amendment." (Id. ¶¶ 16-17.) In addition, the plaintiffs allege that because Herrick and Cerny used Andrea to gain access to the apartment, they "created a special relationship with [her]" that "elevat[ed] their duty to secure her safety." (Id. ¶ 15.) They add that Herrick and Cerny acted negligently by "failing to adequately protect [Andrea] and provide for her safety while she was in their custody," that the City of Ralston is liable for Herrick's and Cerny's negligence "under the doctrine of respondeat superior," and that the City of Ralston is liable for its own negligence in failing to train and supervise Herrick and Cerny. (Id. ¶ 19.) The plaintiffs seek a judgment declaring that the defendants "violated the Constitution of and laws of the United States and the State of Nebraska"; awarding damages and costs to the plaintiffs; and awarding "such other and further relief as this Court may deem just and proper." (Id. at 5.)

On or about July 29, 2009, Andrea Grove and Tom Grove filed a complaint against the City of Ralston in the District Court of Douglas County, Nebraska, Case ID No. CI 10-9384387 (the State

Action). (Defs.' Index, Ex. A, Culhane Aff. Ex. A, ECF No. 15-1.) In the State Action, which is brought pursuant to the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-928, the plaintiffs allege that Ralston "was negligent in failing to protect Andrea while [she was] in its custody" on March 8, 2008, at 4740 S. 83rd Street, Apartment 3, Omaha, Nebraska. (Id. ¶¶ 6-7, 9.)[1] The plaintiffs also allege that Ralston's negligence caused Andrea to suffer injuries that include a radius fracture, an ulna styloid fracture, a flail chest, a rib fracture, and psychological harm, (id. ¶¶ 9-10), and they seek to recover damages and costs from Ralston, (id. ¶ 13).

"[A]ll written and deposition discovery" has been completed in the State Action, "and no discovery of any kind has been conducted since February 16, 2011." (Defs.' Index, Ex. A, Culhane Aff. ¶ 5, ECF No. 15-1.) Trial was originally scheduled to begin on August 17, 2011, but it was continued by the plaintiffs. (Id. ¶ 6.) On January 4, 2012, the district court judge entered an order scheduling the trial for August 1, 2012. (Defs.' Index, Ex. A, Culhane Aff. Ex. C, ECF No. 15-1.) On or about July 18, 2012, the plaintiffs filed a motion to recuse the district court judge. (Defs.' Index, Ex. A, Culhane Aff. Ex. D, ECF No. 15-1.) This motion was granted, and the case was reassigned to a different judge. (Defs.' Index, Ex. A, Culhane Aff. ¶ 5, ECF No. 15-1.) As of August 3, 2012, the State Action had not yet been scheduled for trial. (Id. ¶ 9.)

## II. STANDARD OF REVIEW
### A. Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of a plaintiff's jurisdictional allegations. See, e.g., Stalley v. Catholic Health Initiatives, 509 F.3d 517, 520-21 (8th Cir. 2007) (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In a facial attack, the standard of review is the same standard that applies to motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6): I must "accept as true all factual allegations in the complaint, giving no effect to conclusory

---

[1] The instant complaint alleges that the apartment in question is located in Ralston, while the complaint filed in the State Action alleges that the apartment is located in Omaha. Despite this discrepancy, there appears to be no dispute that both complaints are based on the same incident.

allegations of law," and I must determine whether the plaintiff has asserted "facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley, 509 F.3d at 521 (citing, inter alia, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007)). (See also infra Part II.B.)  In contrast, "[w]hen a district court engages in a factual review, it inquires into and resolves factual disputes." Faibisch v. University of Minnesota, 304 F.3d 797, 801 (8th Cir. 2002).  Under these circumstances, the plaintiff is not entitled to the benefit of the assumption that his factual allegations are true, and "the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Titus v. Sullivan, 4 F.3d 590, 593 & n.1 (8th Cir. 1993).

In this case, the defendants have submitted evidence outside the pleadings for my consideration, (see generally Defs.' Index, ECF No. 15), but this evidence does not challenge the truthfulness of the plaintiffs' factual allegations.  Instead, the evidence provides information about a state action that, according to the defendants, "rests on the exact same set of facts" as the instant action. (Defs.' Br. at 2, ECF No. 16.)  I shall consider the evidence submitted by the defendants when resolving any factual disputes raised by the instant motion.  To the extent that the complaint's factual allegations remain uncontradicted in the face of this evidence, I shall accept them as true.

### B.   Rule 12(b)(6)

"Federal Rule of Civil Procedure 8 requires that a complaint present 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Also, although a court must accept as true all factual allegations when analyzing a Rule 12(b)(6) motion, it is not bound to accept as true legal conclusions that have been framed as factual allegations.  See id. ("[T]he tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). See also Cook v. ACS State & Local Solutions, Inc., 663 F.3d 989, 992 (8th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).

### III.   ANALYSIS

The defendants argue that because the State Action concerns the same subject matter as the instant action, the complaint must be dismissed pursuant to the abstention doctrine. (See Defs.' Br. at 3-5, ECF No. 16.) Alternately, the defendants argue that dismissal is in order because the "[p]laintiffs have [pleaded] nothing more than mere negligence." (Id. at 6.) I shall consider each of the defendants' arguments in turn.

#### A.   Abstention

"[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 292 (2005) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). See also Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F.3d 527, 534 (8th Cir. 2009) ("Federal courts . . . have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them, even when there is a pending state court action involving the same subject matter.'"). Nevertheless, "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." Exxon Mobil Corp., 544 U.S. at 292 (citing, inter alia, Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976);

Younger v. Harris, 401 U.S. 37 (1971); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941)).  The defendants argue that the complaint should be dismissed pursuant to any one of three variations of the abstention doctrine.  (See Defs.' Br. at 3-5, ECF No. 16.)

First, citing Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), the defendants argue that dismissal is appropriate "[g]iven the piecemeal litigation that the Complaint is certain to produce and the fact that the state court has already had jurisdiction over this case for more than three years." (Defs.' Br. at 4, ECF No. 16.)  Under Colorado River, "a federal court may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and exceptional circumstances warrant abstention."  Fru-Con Constr. Corp. v. Controlled Air, Inc., 574 F.3d 527, 534 (8th Cir. 2009) (citing Colorado River, 424 U.S. at 817-18).  Thus, I must determine first whether the instant action and the State Action are "parallel."  If they are, I must then proceed to determine whether exceptional circumstances warrant abstention.

Although "the prevailing view is that state and federal proceedings are parallel for purposes of Colorado River abstention when substantially similar parties are litigating substantially similar issues in both state and federal court," the Eighth Circuit "requires more precision."  United States v. Rice, 605 F.3d 473, 476 (8th Cir. 2010) (quoting Fru-Con Constr. Corp., 574 F.3d at 535).  "[A] substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court."  Id. (quoting Fru-Con Constr. Corp., 574 F.3d at 535).  See also Fru-Con Constr. Corp., 574 F.3d at 565 ("The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient." (opinion of Beam, J.)).

I am not persuaded that the State Action and the instant case are parallel.  It is true that the plaintiffs in each case are similar, and the issue of Ralston's negligence is raised in both actions.  In the State Action, however, only Ralston is named as a defendant, and the plaintiffs' claims against it are based solely on the Political Subdivisions Tort Claims Act.  In the instant case, in contrast, Herrick and Cerny are named as defendants in both their individual and official capacities, and the complaint alleges that the defendants not only acted negligently, but also violated the Fourth Amendment and the Fourteenth Amendment.  (E.g., Compl. ¶¶ 2, 5, ECF No. 1.)  Thus, I cannot say

6

that there is a substantial likelihood that the State Action will fully dispose of the claims presented in this court. Rice, 605 F.3d at 476. Indeed, an ultimate finding in the State Action on the issue of Ralston's negligence will have little bearing on the issue of whether Herrick and Cerny are individually liable in this case.

Even if I were to assume, for the purposes of argument, that the State Action and the instant case are parallel, abstention would not be justified absent "the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 926 (8th Cir. 2006) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr., 460 U.S. 1, 14 (1983)) (emphasis omitted). Determining whether exceptional circumstances exist requires courts to evaluate six factors: 1) "whether there is a res over which one court has established jurisdiction"; 2) "the inconvenience of the federal forum"; 3) "whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed"; 4) "which case has priority – not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases"; 5) "whether state or federal law controls, especially favoring the exercise of jurisdiction whether federal law controls"; and 6) "the adequacy of the state forum to protect the federal plaintiff's rights." Id. (quoting United States Fidelity and Guaranty Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 263 (8th Cir. 1994)). "These factors are not intended to be exhaustive, nor are they mechanically applied. Rather, they are pragmatically applied to advance the 'clear federal policy' of avoiding piecemeal adjudication." Id. (citing Moses H. Cone Mem. Hosp., 460 U.S. at 16, 21). "When examining the factors, 'the balance [is] heavily weighted in favor of the exercise of jurisdiction.'" Id. (quoting Moses H. Cone Mem. Hosp., 460 U.S. at 16).

In the case before me, it appears that only factors three and four weigh into the "exceptional circumstances" calculation. The third factor, which focuses on the undesirability of piecemeal litigation, is "the predominant factor" in the calculation because "[t]he policies underlying Colorado River abstention are 'considerations of wise judicial administration, . . . conservation of judicial resources and comprehensive disposition of litigation.'" Mountain Pure, LLC, 439 F.3d at 927 (quoting Colorado River, 424 U.S. at 817) (internal quotation marks and brackets omitted). To avoid piecemeal litigation, however, courts favor "the most complete action." Id. Here, the broader

collection of parties and claims appears in the instant action, not the State Action. Although there is some overlap between the actions, I find that the overlap does not amount to an exceptional circumstance that warrants abstention. The fourth factor emphasizes the relative progress of the actions, and it is relevant here because the State Action was filed first and has progressed to the point that it is ready for trial.[2] It seems to me, however, that a trial in the State Action will not address most of the claims alleged in the instant complaint. Thus, the fact that the State Action is quite advanced does not appear to weigh heavily in favor of abstention.

In short, the defendants have not shown that the State Action and the instant action are parallel, and I am not persuaded that there are exceptional circumstances sufficient to justify the exercise of Colorado River abstention.

Second, the defendants argue that abstention is appropriate under Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941). (See Defs.' Br. at 4, ECF No. 16.) Pullman is implicated "where [the] case involves [an] unsettled question of state law which concerns important state interests and which may be resolved in such a way as to avoid need for decision of [the] federal constitutional question." List v. County of Carroll, 240 F. App'x 155, 157 (8th Cir. 2007) (citing Coley v. Clinton, 635 F.3d 1364, 1372-73 (8th Cir. 1980)). See also Beavers v. Arkansas State Board of Dental Examiners, 151 F.3d 838, 841 (8th Cir. 1999); Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997) ("Designed to avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues, the Pullman mechanism remitted parties to the state courts for adjudication of the unsettled state-law issues. If settlement of the state-law question did not prove dispositive of the case, the parties could return to the federal court for decision of the federal issues."). "Thus, for Pullman abstention to be appropriate, two requirements must be met. First, the controlling state law must be unclear. Second, a tenable interpretation of the state law must be dispositive of the case." Robinson v. City of Omaha, Nebraska, 866 F.2d 1042, 1043 (8th Cir. 1989). Here, neither of the primary prerequisites for application of the Pullman doctrine have been

---

[2] The defendants submit that the state court "is already intimately familiar with this case and perfectly suited to handle [the] claims." (Defs.' Br. at 4, ECF No. 16.) I do not doubt that the state court is perfectly capable of handing the action. Because the case has recently been reassigned to a new judge, however, it seems to me that the defendant overstates the advantage attributable to the state court's familiarity with the case.

satisfied: there is no unsettled, controlling question of state law that is antecedent to any federal constitutional issues, and therefore it cannot be said that the resolution of such a question could dispose of the plaintiffs' federal claims. Although both the State Action and the instant action include a conventional state-law negligence claim against Ralston, there is no indication that the relevant state law is unclear or unsettled. See, e.g., Casbah, Inc. v. Thone, 651 F.2d 551. 556 n.6 (8th Cir. 1981) ("[S]ince this is not a case which raises difficult or obscure state law questions, the . . . factor cited in Pullman as supportive of abstention is absent here."). Nor have the defendants shown that the issue of Ralston's negligence could be resolved in such a way as to dispose of all of the federal claims raised in the instant action – especially those directed at Herrick and Cerny. The Pullman doctrine is simply inapplicable here.

Third, and finally, the defendants argue that I should abstain in accordance with the principles described in Younger v. Harris, 401 U.S. 37 (1971). (Defs.' Br. at 5, ECF No. 16.) "In Younger, the Supreme Court articulated the strong policy considerations that counsel against the exercise of jurisdiction in the face of ongoing state proceedings[.]" Yamaha Motor Corp., USA v. Stroud, 179 F.3d 598, 602 (8th Cir. 1999).

> The concept of federalism represents a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

Id. (quoting Younger, 401 U.S. at 44 (brackets and ellipses omitted)). Under Younger, "[a]bstention is proper if there is an ongoing state judicial proceeding, the proceeding implicates important state interests, there is an adequate opportunity in the state proceedings to raise constitutional challenges, and in the absence of 'bad faith, harassment, or other exceptional circumstances.'" Stroud, 179 F.3d at 602 (quoting Middlesex County Ethics Commission v. Garden State Bar Association, 457 U.S. 423, 432, 437 (1982)). See also Cedar Rapids Cellular Telephone, L.P. v. Miller, 280 F.3d 874, 879-882 (8th Cir. 2002). It does appear that each of the foregoing criteria are satisfied in this case: There is an ongoing state judicial proceeding that implicates important state interests (i.e., interests in resolving tort claims raised by citizens against the state's political subdivisions and determining the obligations of its law enforcement personnel); the plaintiffs evidently did not raise their federal

claims in the State Action, but there is no indication that they could not have done so, see Night Clubs, Inc. v. City of Fort Smith, Ark., 163 F.3d 475, 480-81 (8th Cir. 1998); and there is no indication of any bad faith, harassment, or other exceptional circumstances. Furthermore, the resolution of the instant action may unduly interfere with the State Action, particularly insofar as both suits raise identical state law negligence claims against Ralston. I find, therefore, that it is appropriate to abstain under Younger principles.

Although the Younger doctrine counsels abstention in this case, it does not favor dismissal of the complaint. "When monetary damages are sought . . . and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed." Stroud, 179 F.3d at 603-04 (citing Night Clubs, Inc., 163 F.3d at 482). "As long as there may be issues which will need to be determined in federal court, a stay rather than a dismissal is the preferred procedure for use in abstaining." Id. (citing International Assoc. of Entrepreneurs of America v. Angoff, 58 F.3d 1266, 1271 (8th Cir. 1995)). Although the defendants argue that the State Action will resolve all of the issues raised in the instant action, I do not agree. Indeed, it seems quite likely that the plaintiffs' individual-capacity claims against Herrick and Cerny will be unaffected by the State Action. Therefore, the instant case will be stayed pending the outcome of the State Action.

**B.   Whether the Complaint Fails to State a Claim Upon Which Relief May Be Granted**

The defendants argue that because the plaintiffs' claims "for purported constitutional violations" all sound in "nothing more than mere negligence, which is not actionable under the United States Constitution," their claims must be dismissed under Rule 12(b)(6). (Defs.' Br. at 6, ECF No. 16.)

The plaintiffs' "constitutional claims" are based on § 1983, the Fourth Amendment, and the Fourteenth Amendment. (See Compl. ¶¶ 2, 5, ECF No. 1.) Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." Daniels v. Williams, 474 U.S. 327, 330 (1986). "But in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim." Id. The parties appear to agree that allegations of mere negligence are not enough to state violations of the Fourth or Fourteenth Amendments. (See Defs.'

Br. at 6, ECF No. 16; Pls.' Br. at 5-6, ECF No. 17.)  However, apart from the plaintiffs' passing reference to "deliberate indifference" on the part of Ralston, neither the plaintiffs nor the defendants have identified the particular "state-of-mind" requirements that the plaintiffs must plead in order to avoid the dismissal of each of their constitutional claims.  (See id.)  Indeed, none of the pleading requirements applicable to any of the plaintiffs' claims have been fleshed out by the parties.  In short, the issue raised by the defendants' motion to dismiss is quite narrow: I am asked only to determine whether the complaint alleges "nothing more than mere negligence."  (Defs.' Br. at 6, ECF No. 16.  See also Mot. to Dismiss ¶ 9, ECF No. 14.)

After reviewing the complaint, I am not persuaded that the plaintiffs have alleged "nothing more than mere negligence" on the part of the defendants.  The plaintiffs claim that Herrick and Cerny seized Andrea and ordered her to aid them in their investigation of the noise complaint at 4740 South 83rd Street.  The officers allegedly hid behind Andrea, used her as a shield to gain entry to the apartment, placed her in restraints on the floor of a room whose unrestrained occupants were threatening her, and failed to intervene when she fled from the apartment and suffered a three-story fall.  Although the foregoing actions and omissions form the basis of the plaintiffs' negligence claim, it is also reasonable to infer that they amount to more than mere negligence.  Furthermore, in the absence of any argument to the contrary, I am not prepared to conclude that these allegations fail to state a constitutional violation.  See, e.g., Fields v. Abbott, 652 F.3d 886, 890-91 (8th Cir. 2011) (noting that substantive due process requires the state to protect individuals in its custody and individuals who have been subjected to "state-created danger").[3]  Similarly, the complaint does not allege that Ralston was simply negligent; it also alleges that Ralston failed to train Herrick and Cerny "to protect an individual in involuntary custody when the individual is unable to provide protection for themselves" and that the plaintiffs' constitutional injuries resulted from Ralston's "practice" of

---

[3] I re-emphasize that I have not been asked to determine, and I have not determined, whether the complaint's allegations are sufficient to state a claim under Fields or any other relevant theory.  I find only that the claims against Herrick and Cerny shall not be dismissed on the ground that they are based upon allegations of "mere negligence."

11

allowing officers to use a "minor as an informant/human shield." (Compl. ¶¶ 16-17, ECF No. 1.)[4] Thus, I am not convinced that the plaintiffs' § 1983 claims must be dismissed on the ground that the "[p]laintiffs have [pleaded] nothing more than mere negligence."

**IT IS ORDERED** that:

1. the defendants' motion to dismiss, ECF No. 14, is granted in part;

2. this case will be stayed pending the outcome of the State Action identified in the memorandum accompanying this order;

3. in all other respects, the defendants' motion to dismiss is denied; and

4. the parties shall promptly inform this court when the judgment in the State Action is final.

Dated December 3, 2012.

BY THE COURT

_____
Warren K. Urbom
United States Senior District Judge

---

[4] Again, in the interest of clarity, I express no opinion whether the complaint sufficiently alleges a "policy or custom" or "failure to train" theory of municipal liability. See, e.g., Connick v. Thompson, 131 S. Ct. 1350, 1359-60 (2011); Collins v. City of Harker Heights, Tex., 503 U.S. 115, 122-24 (1992) (discussing Canton v. Harris, 489 U.S. 378 (1989)); Ware v. Jackson County, Mo., 150 F.3d 873, 880, (8th Cir. 1998); Springdale Education Association v. Springdale School District, 133 F.3d 649, 651 (8th Cir. 1998). The defendants have argued only that the complaint alleges mere negligence, and I confine my analysis to that particular issue.